UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Criminal No. 07-209 |
| PAUL C. HARARY, | : FILED |
| Defendant. | : SEP 24 2007 |
| | NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

### STATEMENT OF THE OFFENSE

Pursuant to Fed. R. Cr. P. 11, defendant PAUL HARARY agrees and stipulates as follows:

1. PAUL HARARY was a resident of Boca Raton, Florida, who controlled and operated Strategic Asset Management, LLC, a Florida limited liability corporation.

2. AF was a resident of Lighthouse Point, Florida, who was licensed by the National Association of Securities Dealers ("NASD") as a registered securities representative and securities principal and who controlled and operated a securities brokerage firm. Defendant PAUL HARARY supplied a portion of the capital necessary for the formation of AF's securities brokerage firm. As a registered securities representative and securities principal, AF had a relationship of trust and confidence with his clients, and owed certain fiduciary duties of care and loyalty to his clients.

3. RS was a resident of Houston, Texas and was an attorney licensed by the State of Texas.

4. American Financial Holdings, Inc., ("AFHJ") was a corporation which had de minimus assets and revenues and virtually no business operations. As of September of 2004, PAUL HARARY and AF owned and controlled virtually all of the outstanding shares of stock in

AFHJ. During the period of at least September 23, 2004, through August 12, 2005, AFHJ's common stock was quoted under the trading symbol "AFHJ" on the Pink Sheets, an electronic inter-dealer price quotation system that displays quotation and last-sale information for many securities traded in the Over the Counter securities market.

5. Secure Solutions Holding, Inc. ("SSLX") was a Nevada corporation that for certain times material to the conspiracy was headquartered in the District of Columbia, and which had de minimus assets and revenues and virtually no business operations. In the Spring of 2005, PAUL HARARY secretly gained control of a large majority of the outstanding free-trading shares of SSLX common stock. During the period of at least April 22, 2005, through July 14, 2005 SSLX's common stock was listed under the trading symbol "SSLX" on the Pink Sheets and publicly traded on the Over the Counter securities market. On July 15, 2005, the Securities and Exchange Commission suspended the trading of SSLX securities for 10 days.

### The Conspiracy

6. From in or about January of 2004 and continuing thereafter through at least September 27, 2005 in the District of Columbia and elsewhere, the defendant PAUL HARARY did unlawfully and knowingly conspire, combine, confederate, and agree with other persons both known and unknown to the United States to commit the offenses of mail fraud in violation of 18 U.S.C. §§1341 and 1346, and wire fraud in violation of 18 U.S.C. §§ 1343 and 1346..

### Purpose of the Conspiracy

7. A purpose of the conspiracy was for defendant PAUL HARARY and co-conspirators, to fraudulently obtain money, funds and property from clients of AF and other investors for the use and benefit of the defendant and co-conspirators, to deprive clients of AF of the intangible

right to the honest services of their broker, and to further the conspiracy by various means, including by omissions of material fact and false material pretenses, representations and promises, and by artificially manipulating the price of the securities of AFHJ and SSLX.

## Manner and Means of the Conspiracy

8. It was part of the conspiracy that PAUL HARARY, AF, and other co-conspirators agreed to obtain secret control of a large majority of the outstanding free-trading shares of stock in AFHJ and SSLX, and thereafter fraudulently manipulate the market price of AFHJ and SSLX stock by coordinating prearranged "matched trades" (that is, stock purchases and sales with the knowledge and understanding that a reciprocal order of substantially the same amount would be entered at or around that time for substantially the same price) at inflated prices through the Over the Counter Securities market to create the false and misleading appearance of an active and rising market in AFHJ and SSLX stock and to induce victims to purchase shares at artificially inflated prices that were far in excess of the value of the securities.

9. It was further part of the conspiracy that in certain instances, AF purchased AFHJ and SSLX stock for customer accounts without the authorization or knowledge of the clients.

10. It was further part of the conspiracy that on or about April 22, 2005, PAUL HARARY, AF, RS and others caused pre-arranged trades of SSLX stock to be made at the artificially inflated price of approximately $2 per share, resulting in RS receiving approximately $150,000 in proceeds, which were in large part fraudulently obtained from AF's clients, and resulting in SSLX stock beginning to trade on April 22, 2005 at the artificially inflated price of $2 per share.

11. It was further part of the conspiracy that AF and PAUL HARARY agreed to have AF's client accounts purchase AFHJ stock and SSLX stock at artificially inflated prices in prearranged trades on the Over the Counter securities market designed and executed such that AF's client accounts would receive stock sold from accounts controlled by PAUL HARARY. AF and PAUL HARARY executed these prearranged trades with the secret agreement that AF and PAUL HARARY would split the profits from such trades (after money was set aside to pay taxes, and in some instances after money was set aside to make certain cash payments and other compensation to another person) without informing AF's clients that AF was receiving cash kickbacks of a large percentage of the profits from their purchases of AFHJ and SSLX stock.

12. It was further part of the conspiracy that AF failed to disclose to his clients material information about investing in AFHJ and SSLX, including his personal interest in the AFHJ and SSLX trades.

13. It was further part of the conspiracy that AF, well knowing that he was receiving substantial undisclosed cash payments for the execution of trades in his clients' accounts to purchase SSLX and AFHJ stock, caused confirmation statements to be sent to his customers which falsely represented to customers the commission amount which was being charged to execute trades in AFHJ and SSLX stock and the amount of compensation that was being paid to AF for the AFHJ and SSLX purchases by their accounts.

14. It was further part of the conspiracy that AF executed orders in client accounts to purchase SSLX and AFHJ stock in the market from accounts controlled by PAUL HARARY under the false pretense that the prices paid for SSLX and AFHJ stock were prices determined by a competitive market.

15. It was further part of the conspiracy that PAUL HARARY and AF deprived AF's customers of the intangible right to a broker's honest services.

16. It was further part of the conspiracy that at various times PAUL HARARY and AF met at a gas station in Boca Raton, Florida where PAUL HARARY gave AF envelopes of cash to pay AF his portion of the profits from the fraudulent sales of SSLX and AFHJ stock to AF's client accounts.

17. It was further part of the conspiracy that PAUL HARARY and AF, in order to disguise approximately $820,000 of kick-back payments to AF of profits from the sales of SSLX stock to AF's client accounts at artificially inflated prices, arranged private stock transactions in which PAUL HARARY's wife and another entity paid approximately $820,000 to a company controlled by AF for approximately 170,000 restricted shares of AFHJ stock at a time when PAUL HARARY and AF well knew that the restricted shares of AFHJ stock were not worth anything near $820,000.

18. It was further part of the conspiracy that as a result of the fraudulent pre-arranged trades of AFHJ and SSLX stock, PAUL HARARY and his co-conspirators fraudulently obtained proceeds in excess of $3.8 million.

19. It was further part of the conspiracy that in order to conceal the conspiracy and scheme to defraud AF's clients, PAUL HARARY did give certain false and misleading answers during sworn testimony before the Securities and Exchange Commission on September 27, 2005.

**Overt Acts**

19. In furtherance of the conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the District of Columbia and elsewhere:

a. On May 9, 2005, a telefax message, containing a letter regarding SSLX stock was sent through interstate wire transmission from Washington, D.C., to Hallendale Beach. Florida.

b. On May 10, 2005, a Federal Express envelope containing a stock certificate and stock transfer records was sent from Hallendale Beach, Florida to SSLX offices at 44 North Capitol Street, N.W., Washington, D.C. 20001.

c. On June 22, 2005, an electronic mail message, regarding corporate filings for SSLX, was sent through interstate wire transmission from the State of California and was received in Washington, D.C.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
for the District of Columbia

By: _____
JONATHAN BARR
JOHN GRIFFITH
Assistant U.S. Attorneys
555 4th Street, N.W.
Washington, D.C.  20530
(202) 353-2453

**DEFENDANT'S ACCEPTANCE**

I have read every word of this Statement of Offense.  Pursuant to Fed. R. Crim. P. 11 and 28 U.S.C. § 1746, after consulting with my attorneys, Christopher Bruno, Esq., and David Chase, Esq., I agree and stipulate to this Statement of Offense, and admit and declare under penalties of

perjury that the facts recited within this Statement of Offense are true and correct.

Date: 11/2/06

_____
Paul Harary, Defendant

    I have discussed this Statement of Offense with my client, Mr. Harary. I concur with his decision to stipulate to this Statement of Offense.

Date: 11/2/06

_____
Christopher Bruno, Esq.
Attorney for the Defendant

Date: 11/2/06

_____
David R. Chase, Esq.
Attorney for the Defendant